Final case for argument is 23-2395 in Rape, Floyd. Good morning, my name is Michael Drew. I represent the applicant inventor in this case of Mrs. Bonnie Iris McDonald Floyd. I was the blue brief. So I'm going to, if I could direct your attention to pages 5 and 6 of the blue brief of the appellant. Page 5 shows figures from the utility application for this case. Page 6 shows the drawings from the design application. Now this case is about a design application and claims for priority to the utility application. It was, did the utility patent number issue? No. Mr. Drew, is there any reason why you could not amend the design application to delete one of the columns so that the design would show a 4 by 6 pattern similar to figure 1A? To be honest, your honor, that never came up. I'll have to be honest with you. Never considered that. It was not anything that came up. I mean if you amended the design, the application is pending. If you amended it, then you would have clear, arguably, you would have clear support in the parent. I suppose so. I'm not sure what... I mean, I don't know whether you'd run into any file wrap or estoppel of any sort, but you're not overcoming a reference. You're just clarifying the record to provide written description support. I can't say, I don't know whether we'd be, what would that be, estoppel. A bit of a hypothetical. I have to say that never came up. Never discussed that with the examiner. I'm not sure what approach the examiner would have to that. But I mean, certainly not something I would... Mr. Drew, could I ask you to speak up a little bit more? Oh, I'm sorry, yes. Thank you. Yes, sure. The blanket, a cooling blanket. The idea of the cooling blanket is to provide some immediate on-site relief to humans or animals, other animals, for any kind of ill effects, suffering from any sort of heat-related illness, like a heat stroke or some sort of heat exhaustion. It's also useful in cases of something like a heart attack, any kind of emergency where lowering the body temperature of an individual would provide relief. Now, with respect to the design patent, everything you just said is irrelevant. Yes. I just mentioned that because the design of the utility application is a series of subterrality of rectangular compartments that are separated or arranged in a cross-hatching arrangement in a rectilinear, basically, substrate. The channels that separate the compartments from one another have apertures. This case has come before you for one reason and one reason only. During the prosecution of the design case, the examiner made what I'm terming and we're calling an observation. That observation is that the number of rectangular portions of a blanket is different in the utility application from those shown in the design application. Well, that's correct, is it not? Say again? Isn't that correct? That is correct. The reason that we frame it as an observation rather than a fact is that we're concerned that if we say it's a fact, that tends to have some kind of implication, that perhaps there is some legal significance to it. Our position is that it's an observation, while it's not really a legal significance in the sense that there is no legal consequence to the fact that it is different. The examiner did not agree with that, right? I think the examiner thought there was a legal consequence. Say again? The examiner thought there was a legal consequence. I think it's a fact question whether there's written description support for the design in the earlier utility application, right? That's a fact question, but there is a legal consequence. There is a legal consequence, but I don't think that only because it has been made a legal consequence by this case. It's an observation, but I think the case law shows that it is an observation. There is no real legal consequence that fits within the test set forth by this court as far as analyzing. But you've got different numbers of rectangles. You've got six and four in the utility and six and five in the design. Why was the board not correct in concluding that it shouldn't get the priority date? Well, because the general case, the general analysis that is set forth by this court is that there is a test. And, you know, you guys know it as well as I can, as well as I could recite it. But the test is whether there's a written description that would show that the utility application has their support in the utility application to satisfy the written description requirement under 112. Do I have it correct that the test is whether, I guess it's either a person of ordinary skill in the art or a designer of ordinary skill, would look at the utility application and see if the designer was in possession of the design and the design patent, right? In looking at the utility patent. Yes, at the time of the utility patent. Given the breadth of design patents generally, and the fact that this is a written description is a question of fact. So, in other words, we just have to look whether the board's finding was unreasonable. You know, why isn't it not unreasonable to say, well, you know, I look at one figure, they're different from one another. And we're talking about a design here. And you can't rely on obviousness in order to provide a written description support for something. Our case law says that. No, but I think the case law is that at the time of the filing of the utility application, would that reasonable person have seen that their, with the applicant, with the inventor, have been in possession of the design shown in the design application, that is claimed in the design application. So how would we know that he was in possession here if he disclosed the two different configurations, but not the one included in the design patent? I think if you look at, and there are cases that support that, you look at several factors. One is that you're looking at the common subject matter. Common subject matter of the drawings in the utility application and the common subject matter of the drawings in the utility application as compared to the drawings of the design application. Common subject matter is not limited to a specific numerical number. Let me ask you this. Go ahead. What limitations apply to your principle? What's the limiting principle? If there were 12 by 4, what would be covered under the written description requirement of the utility? Any number of rectangles? Is there a limit to the number of rectangles or the difference between the horizontal and the vertical? What are the limiting principles in your analysis in terms of what else would come in? I think in this case, because we're talking about a design application, we're looking at a design application, which is depending upon, which is relying upon the utility application. So, a lot of cases show that, okay, the design application may depend upon utility application. Cases show that you look to the drawings. Okay, there are the drawings. And also cases show that you're looking for common subject matter. And again, because we're talking about a design, the aesthetic features, the visual impressions, the ornamental design, it's the look. And I guess if you had to put it in terms of language, because sometimes even though we're talking about visual representations, if I would say the language, again, I would say it's the plurality. You know, a number of rectangular compartments separated by a cross-hatching of channels, of aperture channels within a rectilinear boundary. And so, if you look at that... So, it could be 100 by 100? And that would still, if it was 100 by 100, you would still think, you know, 100 of these rectangles by 100 of the rectangles, you still think that that would have support from the utility application? I think it could. You know, I mean, it doesn't... I don't think you need to go that far. Well, I don't think you need to go that far, but I think if you look at the visual representation, and again, we're just, we're talking about, okay, we said, okay, we've got a six by four, we've got a six by six, we're gonna show a six by five, you know. And in addition, I think what's important is that there is an actual written portion. In other cases, say, you look to the drawings for the written description. If this specification of the utility patent had said, you know, instead of having six by six, as shown in figure one, you could have a five by six, a four by six, a three by six, or, you know, or 12 by 12. If it had specifically indicated five by six, I don't know if we'd be here today, but it doesn't, does it? Well, it doesn't. We're showing the six by six and the six by four as embodiments. But the language, the actual written portion of the written description, which includes the drawings for sure, but which also includes the language in the specification, does talk about the plurality. It talks about... But it doesn't talk about, if I remember correctly, it didn't say anything where it said you could increase or change the number of rectangles. It was a little more vague than that. And the board said that that could mean that you're increasing the size of the rectangles, as opposed to altering the number of rectangles. I think they didn't say a lot of things. But what it did say was that this is a representation, this is an embodiment, and these are other possible... there are general possibilities as to the size. And again, we're not claiming all these other things, that it could have been this, it could have been that. We're saying, okay, we're claiming what we're showing here in this drawing of the design application. And we think that that...  whether or not the inventor had that in her mind at the time that that utility application was filed. Got it. Okay, I have a little question.  My little question is, I noticed that unlike the utility patents, the design patents show some loft, some three-dimensionality that's in the figures. Was there any attention to that by the examiner or the board as being a distinction? We addressed that. I think the examiner asked about the significance of that. And I believe that during the examination, we said that they were contour lines, and that did not relate to the design aspects. You said that they were what? Contour lines. In other words... I mean, they're not dotted. Maybe I misunderstand design patent law, but I thought that all of the design counts in a design patent unless the lines are dotted. I can't remember the exact section of the exact language, but these lines were considered to show the contours, that there was some three-dimensionality to these compartments. And we dropped that. We removed that. Well, we didn't remove it. We indicated in response to the examiner's question that those were contour lines and not considered to be a part of what was being claimed as the subject matter. Okay. Why don't we hear from the other side, and then we'll retain your rebuttal. Okay. Thank you. May it please the court, Brian Ursula on behalf of the United States Patent and Trademark Office. Before you begin your argument, would the patent office have any objection if the applicant here sought to amend the design application to change the drawing from a five-by-six to a four-by-six pattern? I think we would still potentially have a problem with that in view of the In Re Owens case, because I think what the applicant would be doing in that case is drawing a dotted line, a broken line, and displaying the... No, I'm suggesting just amending the drawing to show a four-by-six pattern, not a five-by-six pattern, so that it would conform to the utility application drawing figure 1A. So you're saying that if they would amend the figure 1 in design patent to look like figure 1A.  Is there any reason why they couldn't do that? The application is pending. I mean, it is claiming priority back to the earlier utility patent. Yeah, I don't think it's new matter, because it's a... I guess it's claimed as a divisional, but... I mean, it's claimed as a divisional, correct, but the... And the problem with the divisional right now is that there's no written description between the figures as they currently exist and the figures in the earlier utility application. Regarding whether or not to... If taking one column away, perhaps, but there would have to be additional changes made, I believe, because the four-by-six figure 1A has square... Yeah, but wait, wait, wait. Compartments, not rectangular. Let's just forget about figure 1A, and figure 1 of the utility patent to figure 1 of the design patent. So then you're adding... That's a six-by-six. So now you're adding an additional column to the design patent. Yeah. My suggestion is just amend the design application to conform exactly to what is disclosed in the utility application to avoid the issue that we're confronting now. I mean, I think it would require a new written description analysis and a new analysis by the examiner, but that seems it would take care of the written description argument presently here. Can I ask you, Mr. Drew didn't press it here, but I gleaned from his brief, particularly the gray brief. Now, he didn't cite the RAI decision in blue, rightfully so, because it issued like a week after he filed his brief, but obviously you didn't respond to it in red. But I took his analysis of the RAI decision to be that, which is why I think he should have answered my hypothetical differently, that the reason this ought to be okay is because it's between, sort of like it's analogous to the range cases in RAI, and therefore it's because it's between six times six and six times four, it should be okay under the RAI analysis. So what's your answer to that? We disagree with that. We don't think that's the proper analysis. We don't think there's a range disclosed in this case, and I think it would actually be very difficult to disclose a range in a design patent case. What the case law tells us is to look back for written description for a design claim, you look back to the illustrations that show the ornamental design of the earlier design, and whether the later claim design is shown in those illustrations. That has to be depicted in an illustration. That's what the Daniels case, the Owens case, the racing strollers case all tells us. That's how we determine written description for design claims. Now the Daniels case and the Owens cases, those were different, right? Because they were design patents that were relying on earlier design patents, right? So they couldn't rely on anything other than the figures. That's correct, but they look back to the racing strollers case. The racing strollers case is a design patent looking back to a utility patent, and what the court said in the racing strollers case is that for 120, the question is, is there any illustration in any form in that earlier disclosure that supports or that shows the later claimed design? And so we think that case is pretty clear to tell us that even in a situation like this where you're looking back at a utility application, you're looking back to the figures in the utility application, and those figures in the utility application disclose what they disclose, what they show, the ornamental aspects of the design, the visual impression of the design, and what Daniels and Owens tells us, and citing back to these cases, is the design has to be completely there, visually there. So in other words, in these cases you could never rely on anything that is said in the utility patent. That's correct, our view. Especially if you're trying to create an image, right? If you're trying to describe a new figure, a new design, you can't go back to that language and create that visual impression. That's a little different, though, because it's not like just create an image. I mean, it's take away a row or take away a column. It's not different, we don't think. Especially in view of the broader language, and this is why we cited to the Indivier case, because to the extent that you want to go back and look to that language, we don't think you should go back and can go back to that language, but to the extent that you think that some kind of range can be shown, the language in this case would preclude any finding of written description because the language is so broad, it said it could be any size, it says it could be a square corner, it could be a rounded corner, it said that the seams could be of any size, so the board found in its decision that that language would preclude and prevent any kind of written description. You couldn't show, a reasonable designer would not recognize that the design applicant had possession of the 6x5 design because through that entire universe of shapes and sizes, a designer might end up landing on a 6x5 design, but that just would have been obvious, and we know from this court's case law that obviousness, you can't rely on that to show written description. Mr. Brasile, let me direct your attention to the board's decision. On page 5, the board, in concluding that the application doesn't convey with reasonable clarity that the inventor was in possession of the particular blanket design, at the top of the page, third line down, it says nothing in the disclosure of the 938 application pointed to IOPEL provides any detail as to the visual impression or ornamental design of the presently claimed cooling blanket. And from that, the board concludes that there's no evidence of possession as of that filing date. But yet on page 7, at the top of the page, now this is in the context of the anticipation ruling, the board says appellant does not point to any particular differences between the 938 application and the claimed subject matter such that they are not substantially the same for purposes of the ordinary observer test. So the two designs are substantially the same for purposes of the ordinary observer test, yet there's nothing to suggest that there's a similar visual impression for purposes of the written description test. It seems to be somewhat contradictory. I think what you're touching on is the idea that the disclosure to meet a 112 written description analysis and the disclosure to meet an anticipation analysis are different. And this court has recognized, and the predecessors of this court have recognized for more than 50 years back to the Lukacs case, that there's some daylight between the law of disclosure for 112 and disclosure for 102. Yeah, I mean, Vascav made that perfectly clear. And it's easy to understand in the context of utility patents. But in the context of design patents, where the visual impression is at the heart of things, you're not reading claim limitations on structure or accused devices. It's the visual impression that's created. It's a little different context, which makes it very difficult, it seems to me, to rationalize the two statements that were made here by the board, that at one point they're saying there's no detail that would suggest that the visual impression is the same. If you add two pages later, they're not substantially the same. And I understand the concern of the court here, but I think the application of the law of anticipation and the application of the law of written description leads to that decision. So, for example, what this court has told us in Ariad is that you have to demonstrate within the disclosure that the inventor invented or had possession of, the claimed design. And you can't go outside of that record. And what the court tells us in the racing strollers case is that we have to look to the figures. And so what the figures are, what provides the written description for a design. And so looking back at the figures, if the figures do not show the later design, then there's no written description. Maybe the distinction is that in the written description context, you have to point to some specific details to establish possession of the invention. Whereas in the anticipation context, it's not necessarily any specific written details. It's the overall visual impression, all things considered. So maybe that's the distinction, but it's a very fine line. Exactly. I mean, I think that is correct. And I do agree it is a very fine line. But there is a line, there is daylight between the two. And unfortunately, the applicant, his case falls within that daylight. All right. Thank you. Just a few quick points to summarize. With respect to the matter of the actual written portion of the written description being disregarded, I don't think there's anything in the case law that says that you can or should do that. I think the case law says that, okay, with design cases, you do look to the drawings. But it doesn't say disregard any actual written description in the written description. So I think that should be taken into account. Also to summarize, I think a literal interpretation of sections 120 and 112 would lead to the result that the inventor did have possession of this idea of a 6 by 5 array. That's not the controlling factor. The controlling factor is the visual impression. I think one of the things that has happened here by the Patent Office is sort of a circular reasoning or hindsight type of reasoning or looking back reasoning. And that is that the Patent Office defined the invention that was claimed, that visual impression, that ornamentation of the design case in a way that necessarily excludes the 6 by 5 array that is shown. There's common subject matter, and that has consisted in these cases that you look at the original utility application, you look at the drawings from the design application, is there common subject matter there? And I think the evidence more likely shows that there is and isn't. Another idea here that comes into play is that in Powell Oasis, the court also talked about what is shown actually or inherently. And I think that that is in play here also. I see that I'm just about out of time, but I think everything is already stated in the blue brief and our gray brief. Thank you very much. Thank you. We thank both sides. The case is submitted. That concludes our proceeding.